**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **TOMMY L. TAYLOR,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CIVIL NO. 09-123-GPM** |
| ) | |
| **UNION PACIFIC RAILROAD COMPANY,** ) | |
| **a corporation,** ) | |
| ) | |
| **Defendant.** ) | |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

## I. INTRODUCTION

This matter currently is before the Court on a motion to exclude evidence brought by Plaintiff Tommy L. Taylor (Doc. 43) and a motion to exclude evidence brought by Defendant Union Pacific Railroad Company ("UP") (Doc. 49). This case is a suit under the Federal Employer's Liability Act, 45 U.S.C. § 51 *et seq.*, and the Locomotive Inspection Act, 49 U.S.C. § 20701 *et seq.* Taylor claims that on December 28, 2007, he was working as a locomotive engineer for UP, operating Locomotive UP 9315 on a run from Dexter, Missouri, to Dupo, Illinois. Over the course of approximately four hours, according to Taylor, he was exposed to sulfuric acid fumes from a defective, overheating locomotive battery in the cab of UP 9315. As a result of the said exposure, Taylor contends that he suffers from pulmonary disease, specifically, reactive airways dysfunction syndrome ("RADS"), and is permanently and completely disabled. Taylor now seeks to exclude the testimony of Phillip Goad, a toxicologist retained by UP as an expert witness, while UP seeks to exclude the testimony of Jan Klosterman, a life care planner retained by Taylor as an expert witness.

Page 1 of 7

The Court has reviewed carefully the submissions of the parties.  Also, on September 13, 2010, the

Court conducted a hearing at which both Goad and Klosterman testified and at which the Court was

able to examine both witnesses.  The Court rules as follows.

## II. ANALYSIS

### 1.      Legal Standard

In federal court the admissibility of expert testimony in evidence is governed, of course, by

the Federal Rules of Evidence, which provide:

> If scientific, technical, or other specialized knowledge will assist the trier of fact
> to understand the evidence or to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or education, may testify thereto in
> the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts
> or data, (2) the testimony is the product of reliable principles and methods,
> and (3) the witness has applied the principles and methods reliably to the facts of the
> case.

Fed. R. Evid. 702.  Rule 702 obligates courts to act as gatekeepers with respect to expert testimony

concerning scientific, technical, or other specialized knowledge.  *See Daubert v. Merrell Dow*

*Pharms., Inc.*, 509 U.S. 579, 589 (1993); *United States v. Conn*, 297 F.3d 548, 555-56

(7th Cir. 2002).  In evaluating the admissibility of evidence under Rule 702, a court must determine

whether (1) the proposed witness would testify to valid specialized knowledge and (2) the expert's

testimony will assist the trier of fact.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151-52

(1999); *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004).  The first prong

of this test requires the court to determine whether the expert is qualified in the relevant field and

whether the methodology underlying the expert's conclusions is reliable.  *See Daubert*, 509 U.S.

at 592; *Masters v. Hesston Corp.*, 291 F.3d 985, 991 (7th Cir. 2002).  This calls upon the trial court

to assess whether the proffered testimony is both relevant and reliable.  *See Kumho Tire*, 526 U.S.

at 152; *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007).  In assessing an expert's methodology, a court should consider:  (1) whether the proffered conclusion lends itself to verification by the scientific method through testing; (2) whether it has been subjected to peer review; (3) whether it has been evaluated in light of the potential rate of error of the scientific technique; and (4) whether it is consistent with the generally accepted method for gathering the relevant scientific evidence.  *See Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996) (citing *Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 58 F.3d 341, 344 (7th Cir. 1995)).  However, these factors may not always be pertinent in assessing the reliability of expert testimony, for the *Daubert* inquiry is a flexible one, and an expert's testimony need not satisfy each of the factors to be admissible.  *See Daubert*, 509 U.S. at 592-94; *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002).  With the foregoing standard in mind, the Court turns to consideration of the motions to exclude the testimony of Goad and Klosterman.

### 2.    Testimony of Phillip Goad

As already has been noted, Phillip Goad is a toxicologist who has been retained by UP as an expert witness.  Taylor seeks exclusion of evidence pertaining to certain tests that Goad performed in an effort to determine the level of sulfuric acid fumes in the cab of UP 9315 at the time of the incident giving rise to this case.  It appears that Goad conducted three different tests:  charging batteries of the same make as the batteries with which UP 9315 was equipped to the boiling point to determine what chemicals the boiling batteries would emit; overheating the batteries in the battery compartment of UP 9315, then measuring the emission products from the batteries as they came out of the compartment and into the cab of the engine; and putting a smoke generator on UP 9315, then pushing it down the rails and taking measurements.

Goad's qualifications as a toxicologist are not seriously in dispute, although Taylor does raise the point that Goad has limited experience with locomotive batteries.  However, an expert need not have credentials narrowly tailored to the subject matter of a case in order to pass muster under Rule 702, so long as the expert is testifying to matters within the area of his or her expertise. "The notion that *Daubert* . . . requires particular credentials for an expert witness is radically unsound . . . . Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness." *Tuf Racing Prods., Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000).  *See also Latham v. Edelbrock Corp.*, Civil No. 07-713-GPM, 2009 WL 3156554, at *1 (S.D. Ill. Sept. 26, 2009) (citing *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81-82 (2d Cir. 1997)) ("[A]n expert is not precluded from testifying merely because he or she does not possess experience tailored to the precise product or process that is the subject matter of a case, provided that the expert is testifying within the general area of his or her expertise[.]"); *McCloud v. Goodyear Dunlop Tires N. Am., Ltd.*, 479 F. Supp. 2d 882, 887-90 (C.D. Ill. 2007)  (an expert in rubber polymers and tire mechanics could testify in a case pertaining to motorcycle tires although he had limited experience with the manufacture of such tires); *Abdishi v. Philip Morris*, No. 98 C 1310, 1999 WL 756054, at *9 (N.D. Ill. Sept. 7, 1999) (a toxicologist could testify generally about the toxicity of a substance causing irritation to the skin although he did not have any experience dealing with the toxicity of the substance in humans).

Taylor's remaining objections to Goad's evidence go chiefly to Goad's supposed failure to replicate exactly in his testing the conditions prevailing on UP 9315 at the time of the toxic exposure incident giving rise to this case.  For example, Taylor argues that Goad's tests are inaccurate because: the batteries Goad used in the testing did not contain broken internal jumpers; Goad used batteries

that were not burned; Goad used batteries that contained electrolyte; Goad did not attempt in his testing to duplicate the temperature, wind speed and direction, and humidity prevailing at the time of the alleged exposure incident; and Goad did not perform his tests aboard a moving locomotive with air inlets. Taylor also challenges Goad's tests as being contrary to eyewitness testimony about the exposure incident because the testing produced neither smoke nor an odor of sulfuric acid fumes. Finally, Taylor appears to suggest that Goad's testimony is motivated by the fact that Goad has a contract with UP whereby he provides services in incidents involving derailment and chemical release. UP has produced detailed rebuttals to each of Taylor's objections to Goad's testing and, in any event, as should be clear from the foregoing discussion, Taylor's objections to Goad's testimony are challenges to Goad's credibility as a witness and the weight to be afforded his testimony. As *Daubert* teaches, however, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596. The decision about whether an expert is "credible or whether his or her theories are correct" is a factual determination for a jury to make "after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based." *Smith v. Ford Motor Co*., 215 F.3d 713, 719 (7th Cir. 2000). *See also Green v. Goodyear Dunlop Tires N. Am., Ltd*., Civil No. 08-472-GPM, 2010 WL 747505, at *3 (S.D. Ill. Mar. 2, 2010) (quoting *Bonner v. ISP Techs., Inc*., 259 F.3d 924, 929 (8th Cir. 2001)) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination."). Taylor's motion to exclude Goad's evidence will be denied.

### 3.    Testimony of Jan Klosterman

Like Taylor's challenges to Goad's testimony, UP's challenges to the testimony of Taylor's life care planner Jan Klosterman go to the weight and not the admissibility of her evidence. UP complains that Klosterman, a registered nurse with extensive life care planning experience, is relatively unfamiliar with life care planning in the context of chronic pulmonary illnesses. UP points out also that Klosterman cannot state with certainty how many of her life care plans actually are implemented and she admits that life care plans frequently are amended to reflect changed circumstances. Finally, UP challenges various items of medical and other treatment costs contained in Klosterman's life care plan for Taylor. For example, UP argues, Klosterman's life care plan provides for routine blood counts and chest x-rays, as well as multiple hospitalizations for pulmonary disorders, although Klosterman does not know whether Taylor has required blood counts, chest x-rays, or hospitalization for RADS since the occurrence of the accident giving rise to this case. UP objects further that the life care plan concludes that Taylor will need a scooter for mobility, together with concomitant modifications to Taylor's car and house, such as a van with special lifts and installation of hardwood floors at Taylor's house. UP also objects to Klosterman's life care plan on the grounds that, although Klosterman's normal practice is to solicit three bids on each item contained in a life care plan, in some instances she solicited only one. UP challenges the costs for rehabilitation sessions contained in Klosterman's life care plan, as it is not clear that such sessions are likely to benefit Taylor. Finally, UP objects to Klosterman's life care plan for Taylor on the grounds that it does not take into account costs for medical conditions other than RADS from which Taylor may be suffering or the possibility that Taylor's pulmonary condition may improve, thereby obviating some of the costs contained in the life care plan. With respect to Klosterman's supposed

lack of familiarity with chronic pulmonary illnesses, it is undisputed that Klosterman relied upon standard life care planning techniques in devising Taylor's life care plan and developed the plan in collaboration with Taylor's physicians; as already has been noted, an expert need not have experience with a specific class of cases (in this instance, RADS), provided that the expert's testimony is within the area of his or her specialized knowledge.  Concerning UP's objections to specific costs contained in Klosterman's life care plan, as Taylor points out these are all matters that should be and doubtless will be aired before the jury on cross-examination.  UP's motion to exclude Klosterman's testimony will be denied.

### III. Conclusion

Taylor's motion to exclude the testimony of Phillip Goad (Doc. 43) and UP's motion to exclude the testimony of Jan Klosterman (Doc. 49) are **DENIED**.

**IT IS SO ORDERED.**

DATED:  September 16, 2010


/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge