IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TOMMY L. TAYLOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CIVIL NO. 09-123-GPM |
| | ) |
| UNION PACIFIC RAILROAD COMPANY, | ) |
| a corporation, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This matter is before the Court on a motion in limine brought by Defendant Union Pacific Railroad Company ("UP") (Doc. 124). This case is an action under the Federal Employer's Liability Act, 45 U.S.C. § 51 *et seq.*, and the Locomotive Inspection Act, 49 U.S.C. § 20701 *et seq*. Taylor claims that on December 28, 2007, he was working as a locomotive engineer for UP, operating Locomotive UP 9315 on a run from Dexter, Missouri, to Dupo, Illinois. Over the course of approximately four hours, according to Taylor, he was exposed to sulfuric acid fumes from defective, overheating locomotive batteries on board UP 9315. As a result of the said exposure, Taylor asserts that he suffers from a pulmonary disease, reactive airways dysfunction syndrome, and is totally disabled. Currently this case is set for trial solely on the issue of liability on January 3, 2011, at 8:00 a.m. at the United States District Courthouse in East St. Louis, Illinois, the undersigned United States District Judge presiding. In the instant motion in limine, UP seeks to exclude at trial evidence concerning the destruction of the batteries on board UP 9315 on December 28, 2007. It appears from UP's motion that, at some point before the filing of this

case, the batteries on board UP 9315 at the relevant time were sent by UP to GNB, a battery-repair facility with which UP has a contract for the repair and maintenance of locomotive batteries, where the subject batteries were scrapped.

Although neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence provide expressly for the exclusion of evidence in limine before trial, "[i]n general, federal district courts have the power to exclude evidence in limine pursuant to their inherent authority to manage trials." *Farley v. Miller Fluid Power Corp.*, No. 94 C 2273, 1997 WL 757863, at *1 (N.D. Ill. Nov. 24, 1997) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). The party seeking the exclusion of evidence in limine bears the burden of showing the propriety of such exclusion. *See Capuano v. Consolidated Graphics, Inc.*, Civil Action No. 06 C 5924, 2007 WL 2688421, at *1 (N.D. Ill. Sept. 7, 2007). Decisions regarding the exclusion of evidence in limine, like decisions about the admissibility of evidence generally, are committed to a court's sound discretion. *See Juracek v. City of O'Fallon, Ill. Police Dep't*, Civil No. 05-787-GPM, 2007 WL 3407367, at *2 (S.D. Ill. Nov. 14, 2007); *Thomas v. Sheahan*, 514 F. Supp. 2d 1083, 1087 (N.D. Ill. 2007) (citing *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002)). Evidence may be excluded in limine before trial only where it is clearly inadmissible for any purpose and, "if evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy and prejudice to be resolved in context." *Greenwich Indus., L.P. v. Specialized Seating, Inc.*, No. 02 C 5000, 2003 WL 21148389, at *1 (N.D. Ill. May 16, 2003).

At this juncture the Court cannot conclude that evidence concerning the destruction of the batteries on board UP 9315 on December 28, 2007, is inadmissible at trial in this case for any

purpose. In particular, as Taylor's counsel point out, the destruction of the batteries is highly relevant to the cross-examination Phillip T. Goad, a toxicologist retained by UP as an expert witness who will be called by UP at trial. As already has been discussed by the Court in a prior order in this case, Goad attempted to determine the level of sulfuric acid fumes to which Taylor was exposed by performing tests on locomotive batteries of the same make as the batteries on board UP 9315 on December 28, 2007. *See Taylor v. Union Pac. R.R. Co.*, Civil No. 09-123-GPM, 2010 WL 3724287, at *2 (S.D. Ill. Sept. 16, 2010). The tests that Goad performed were: charging the batteries to the boiling point to determine what chemicals the boiling batteries would emit; overheating the batteries, then measuring the emission products from the batteries as they came out of the compartment and into the cab of UP 9315; and putting a smoke generator on UP 9315, then pushing it down the rails and taking measurements. *See id.* It is Goad's opinion, based on his tests, that the level of sulfuric acid fumes in the cab of UP 9315 on December 28, 2007, was not sufficiently high as to be toxic.

Taylor's counsel sharply challenge the validity of Goad's testing on the grounds that the batteries Goad used in his tests were new, whereas the batteries on board UP 9315 on December 28, 2007, were old and burned and had broken internal jumpers, and the damaged condition of the batteries affected the volume of sulfuric acid fumes that the batteries likely emitted. Thus, it is critical, they argue, that the jury understand that, in performing his tests, Goad did not use the actual batteries on board UP 9315 at the relevant time, that the actual batteries were in a significantly different condition than the batteries used by Goad in his tests, and that the conditions in the cab of UP 9315 when the incident giving rise to this case occurred cannot be closely replicated because the actual batteries with which the locomotive was equipped have been destroyed. In the

past, UP has argued that the fact that the batteries on board UP 9315 on December 28, 2007, were burned and had broken internal jumpers did not affect the volume of sulfuric acid fumes that the batteries likely emitted. *See* Doc. 58 (UP's Opposition to Taylor's Motion to Exclude Evidence of Goad Testing) at 7-9. In the Court's view, Taylor has the better of the argument. The jury should know that Goad did not, and could not, have access to the batteries on board UP 9315 on December 28, 2007.[1] Whether the fact that those batteries were burned and had broken internal jumpers affected the volume of sulfuric acid fumes they likely emitted is a matter for the jury to decide.

As Taylor's counsel point out also, there is a possibility that UP's destruction of the batteries might provide a basis for an instruction to the jury on spoliation of evidence. In some instances, a party's destruction of relevant evidence can give rise to an inference that the evidence was unfavorable to the party that destroyed it. *See Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985); *Adkins v. Mid-America Growers, Inc.*, 141 F.R.D. 466, 473 (N.D. Ill. 1992). However, the mere fact that a party destroyed evidence does not of itself give rise to an adverse inference; rather, an adverse inference arises against the party that destroyed evidence only when the opposing party proves that the evidence was destroyed intentionally in bad faith. *See Miksis v. Howard*, 106 F.3d 754, 762-63 (7th Cir. 1997); *In re Bridgestone/Firestone, Inc.*, 287 F. Supp. 2d 938, 940 (S.D. Ind. 2003). *Accord Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78-79 (3d Cir. 1994); *Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975). In cases where such intentional, bad-faith destruction of evidence is proven, the jury may be instructed to

---

1. It should be pointed out that, were Goad to testify simply that he did not perform his tests using the original batteries or that the batteries were unavailable to him, the jury likely would find it curious if no further explanations were furnished.

assume that the destroyed evidence, had it been admitted at trial, would have been unfavorable to the party that destroyed it.  *See* Fed. Civ. Jury Instr. 7th Cir. 1.20 (2010); *Spesco, Inc. v. General Elec. Co.*, 719 F.2d 233, 239 (7th Cir. 1983).  In this instance it may well be that Taylor's counsel will be unable to prove at trial that UP intentionally destroyed the batteries on board UP 9315 on December 28, 2007, in bad faith.  However, the possibility of proving spoliation of evidence in this case cannot be ruled out at this time.  Once again, the Court cannot find that evidence concerning the destruction of the batteries is inadmissible at trial in this case for any purpose.

To conclude, UP's motion to exclude in limine evidence concerning the destruction of the the locomotive batteries (Doc. 124) is **DENIED**.

**IT IS SO ORDERED.**

DATED:  December 27, 2010

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge