IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TOMMY L. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:09-CV-00123-WDS-CJ |
| v. | ) | |
| | ) | |
| UNION PACIFIC RAILROAD COMPANY, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## <u>DEFENDANT UNION PACIFIC RAILROAD COMPANY'S TRIAL BRIEF</u>

COMES NOW Defendant Union Pacific Railroad Company ("Union Pacific"), by the

undersigned counsel, and submits this Trial Brief to address unusual points of law raised in this

FELA action.

I.      Overview of FELA ..................................................................................................1

II.     Locomotive Inspection Act.....................................................................................3

III.    Foreseeability..........................................................................................................6

IV.     FELA Causation.......................................................................................................7

V.      Apportionment of Damages....................................................................................9

VI.     Damages Available under FELA ...........................................................................12

VII.    Duty to Mitigate Damages ....................................................................................13

VIII.   RRB Disability Benefits Must be Offset ..............................................................16

## I.      **Overview of FELA**

Enacted by Congress in 1908, the Federal Employers' Liability Act, 45 U.S.C. § 51 *et

seq*, ("FELA") provides the exclusive remedy to employees who have allegedly sustained injury

or developed an occupational disease while employed by a defendant rail carrier. *Chicago, R. I.

Ry v. Schendel*, 270 U.S. 611 (1925); *New York Central & Hudson River Railroad Co. v.

Tonsellito*, 244 U.S. 360 (1917). FELA is not a workers' compensation act, but a remedial

statute which treats railroad employees and merchant seaman differently from virtually all other

categories of employees.  *Id.*  Under workers' compensation, an employee is automatically entitled to recovery for medical expenses and a fixed percentage of wages due to injuries arising out of and in the course of employment, regardless of fault.  Under FELA, a plaintiff is required to prove fault on the part of the employer railroad and there is no statutory limit to the amount of compensation, or a guarantee of recovery.

The crux of any FELA action is the averment and proof of negligence on the part of the employer railroad.  *Nivens v. Baltimore and Ohio Railroad Co.*, 425 F.2d 144 (5th Cir. 1970), *cert. denied*, 400 U.S. 879 (1970).  The congressional intent of the FELA was to secure jury determination in a larger proportion of cases than would be true of ordinary common law actions. *Id.*  In other words, "trial by jury is part of the remedy" in FELA cases.  *Boeing Co. v. Shipman*, 411 F.2d 365, 371 (5th Cir. 1969).  Accordingly, it is acknowledged that the burden for submissibility to a jury is "relaxed" emanating from the language of the Act itself.  However, this concept of submissibility cannot be confused with the applicable burdens of proof.

Because FELA is a negligence-based Act, it follows that just as any action premised upon negligence, a FELA plaintiff has the burden of proving by a preponderance of the evidence all the traditional elements of negligence: (1) a particular duty of care owed; (2) a breach of duty; (3) causation; and (4) damages.  *Adams v. CSX Transp., Inc.*, 899 F.2d 536 (6th Cir. 1990); *Williams v. National Railroad Passenger Corp.*, 161 F.3d 1059 (7th Cir. 1998); *Adams v. CSX Transp., Inc.*, 899 F.2d 536 (6th Cir. 1990).

Plaintiff may assert that his burden of proof is lighter under the FELA, and that he needs only show "slight evidence" of negligence.  However, the recent United States Supreme Court decision in *Norfolk Southern Railway Co. v. Sorrell*, 549 U.S. 158, 127 S.Ct. 799, 166 L.Ed.2d 638 (2007), rejected this very assertion.  The Court in *Sorrell* explained that absent express

statutory language to the contrary, the elements of a FELA claim are determined by reference to the common law. *Sorrell*, 127 S.Ct. at 805 (citing *Urie v. Thompson*, 337 U.S. 163, 182 (1949)). *Sorrell* then recited FELA's various departures from common law, including abolishment of the assumption of risk defense and adoption of comparative negligence in place of contributory negligence. *Id.* at 807 (citing *Conrail v. Gottshall*, 512 U.S. 532, 542-43 (1994)). None of the departures from common law included lowering the employee's burden of proof for negligence. As *Sorrell* noted, "[s]o far as negligence is concerned, that standard is the same – ordinary prudence – for both employee and railroad alike." 127 S.Ct. at 807 (quoting *Page v. St. Louis S. R.R. Co.*, 349 F.2d 820, 823 (5th Cir. 1965)).

Plaintiff acknowledges that Union Pacific's duty under FELA is to provide a reasonably safe workplace. As a result, this point will not be further discussed.

## II.     Locomotive Inspection Act

The Locomotive Inspection Act, 49 U.S.C. § 20701 (formerly the Boiler Inspection Act, 45 U.S.C. § 22, *et seq.*) provides in pertinent part that a "railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances:  (1) are in proper condition and safe to operate without unnecessary danger of personal injury . . . ." 49 U.S.C. § 20701.  In enacting the LIA, Congress recognized that "the operation of an engine, however equipped, involves some danger to life or limb." *Gregory v. Missouri Pacific R.R. Co.*, 32 f.2d 160, 165 (5th Cir. 1994).  The Act does not address all perils associated with locomotives, only "unnecessary perils." *Id.*

An action for violation of the LIA is prosecuted as an action under FELA. *Urie v. Thompson,* 337 US 163, 169, n. 30 (1949).  The LIA does not confer a right of action on an employee, but proof of a violation under the LIA establishes a railroad's negligence under the

FELA as a matter of law. *Id.* at 189. For liability to be imposed pursuant to the Act, there must be proof of an unsafe part and proximate cause. *Id.* at 188. The FELA causation standard applies. *Carter v. Atlanta and St. Andrews Bay R.R. Co.*, 338 U.S. 430, 434 (1949).

There are two types of LIA violations: specific and general. With a specific violation of the LIA, a plaintiff has the burden of establishing a violation of a regulation of the act, and that the violation was the proximate cause of his injury. *Green v. River Terminal Ry. Co.*, 763 F.2d 805, 810 (6th Cir. 1985); *Affolder v. New York, Chicago & St. Louis R. R. Co.*, 339 U.S. 96 (1950). With a general violation, a plaintiff has the burden of establishing the railroad failed to maintain the locomotive or its parts and appurtenances so that the locomotive cannot be operated without unnecessary peril to life or limb, and that such violation was the proximate cause of his injury. *See King v. Southern Pacific Transportation Co.*, 855 F.2d 1485, 1489 (10th Cir. 1988).

Under the LIA, the mere fact that an injury occurred does not establish a violation of the act. *Sandstrom v. Chicago & North Western Transp. Co.*, 907 F.2d 839, 840-41 (8th Cir. 1990). In addition, the Locomotive Inspection Act is not intended to impose liability for the employee's inattention. *McGivern v. Northern Pacific Railway Co.*, 132 F.2d 213 (8th Cir. 1942) (A railroad is not negligent for failing to anticipate a lack of care on the part of an employee). Simply put, the plaintiff must provide some evidence that Union Pacific violated the Act in order to overcome Union Pacific's Motion for Summary Judgment.

Plaintiff has alleged Union Pacific violated 49 C.F.R. § 229.43 with regard to the incident at issue due to the alleged emission of sulfur dioxide fumes. However, the fact of an emission alone does not establish a violation of the LIA. For example, in *Bearfield* v. *Soo Line,* 2008 U.S. Dist LEXIS 6710, at *2 (D.N.D. Jan. 29, 2008), a federal district court rejected a similar argument. In *Bearfield,* while coupling two locomotives together and performing the necessary

inspection, the plaintiff reached over an air hose to investigate a possible leak. *Id.* at *3. As his hand was poised over the hose, it blew apart and struck him in the hand, allegedly causing injury. *Id.* Plaintiff moved for partial summary judgment, seeking a ruling that defendant railroad violated the UA and was, in tum, strictly liable for his injuries. *Id.* at *2-3. The Court rejected the plaintiff's argument that "hoses are not supposed to blow apart, and the fact that they did so indicates the existence of a defect." *Id.* at 13.

Rather, Plaintiff must establish that the level of any fumes in the cab exceeded the permissible exposure limit ("PEL") as set by OSHA. In a 1996 report to Congress, the Federal Railroad Administration ("FRA") reviewed existing FRA regulations covering locomotive cab air quality including the regulation relied on by Plaintiff - 49 C.F.R. § 229.43 - and reported on the findings of a study conducted by the FRA in an effort to identify and quantify *inter alia* problems associated with fumes entering the locomotive cab. FRA, United States Department of Transportation, *Locomotive Crashworthiness and Cab Working Conditions - Report to Congress* at 7-1 (September 1996). Although the section of the 1996 report regarding locomotive cab air quality primarily focused on diesel exhaust gases, the report also addressed the issue of vented gases, which includes battery fumes, and referenced "batteries used for starting" as a source of gas and particulate matter. *Id.* at 7-4. The FRA "employs the [Occupational Safety and Health Administration ("OSHA")] criteria to determine compliance with the Locomotive Inspection Act." *Id.* at 7-2. The "FRA chose to deem any measured concentration of a gas that exceed the OSHA 8-hour time weighted PEL to be a cause for concern ...." *Id.* at 7-12-7-13. In other words, the FRA defines excessive gassing, under 49 C.F.R. § 229.43(b), as concentrations which exceed the OSHA PEL.[1] The United States Military and the Federal Aviation Administration also use the OSHA standards to monitor air quality in military vehicles and aircraft cabins. *Id.* at

7-3. Despite taking several sets of gas sampling measurements since 1971, the FRA "failed to confirm a widespread problem with cab air quality, even under conditions tested to closely simulate a worst case scenario." *Id.* at 7-15.

In the instant case, as the Court has noted, to establish a violation of the LIA, the Plaintiff must establish he was exposed to sulfuric acid in an amount that exceeded the 8-hour permissible exposure limit. (Filing 109).

**III.    Foreseeability**

Foreseeability is an essential element of a FELA lawsuit. *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); *Nivens v. St. Louis Southwestern Ry. Co., supra.* A FELA plaintiff must establish that the railroad, in the exercise of ordinary care, should have reasonably foreseen that a particular workplace condition would cause an injury. *Turner v. Norfolk & Western R.R. Co., Inc.,* 785 S.W.2d 569 (1990). What a reasonably prudent entity should or would have anticipated under like circumstance measures the railroad's duty. *Ackley v. Chicago & Northwestern Transp. Co.,* 820 F.2d 263 (8th Cir. 1987).

If the railroad has no knowledge of the alleged defect, then there is no negligence. *Morris v. Compagnie Maritime des Chargeurs Reunis*, 832 F.2d 67 (5th Cir. 1985). When a hazardous condition is alleged, foreseeability or notice must be either actual or constructive for fault to attach. *Sears v. Southern Pac. Co.*, 313 F.2d 498 (9th Cir. 1963); *Kaminski v. Chicago River & Indiana R.R. Co.,* 200 F.2d 1 (7th Cir. 1953).

Clearly, a railroad's conduct is not to be judged with the benefit of hindsight, but rather in reference to the state of knowledge at the time of the alleged injury. *Schaefer v. Union Pacific R.R. Company*, 182 F.3d 933 (10th Cir. 1999). Foreseeability does not refer simply to knowledge of the conditions of the workplace, but rather requires knowledge of the dangerous

character of those conditions. *Kaminski v. Chicago River & Indiana R.R. Co., supra.* If an entity should not reasonably foresee an injury as the result of its conduct, or if its conduct is reasonable in light of what it can anticipate, there is no negligence and no liability under the FELA. *Id.* In the instant case, Union Pacific's conduct cannot be judged with a present state of knowledge, but must be viewed by reasonable knowledge of the relevant time period.

**IV.    FELA Causation**

Plaintiff may assert his burden of proving causation is "slight", e.g., that "slight evidence" and "slight causation" can sustain a jury verdict. This is simply not the case. Just as in traditional negligence cases, Plaintiff must prove – by a preponderance of the evidence – that the railroad's conduct was the actual cause of his injuries. *Green v. River Terminal Ry. Co.,* 763 F.2d 805, 808 (6th Cir. 1985)*; Horn v. Atchison Topeka and Santa Fe R.R. Co.,* 519 S.W.2d 894 (Tex. Ct. App. 1975); *see also Norfolk Southern Railway Co. v. Sorrell*, 549 U.S. 158, 127 S.Ct. 799, 166 L.Ed.2d 638 (2007). As a result, even if a railroad breaches its duty of care toward its employee, it will not be held liable for injuries in the absence of a causal nexus between the breach and the employee's injury. *Tennant v. Peoria & P.U.R. Co.,* 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520 (1944), *reh. denied*, 321 U.S. 802 (1944).

Plaintiff is required to prove that his alleged injury was caused "in whole or in part" by the negligence of Defendant. 45 U.S.C. §51. Plaintiff cannot satisfy his burden of proof by demonstrating merely that Defendants' negligence "played any part, even the slightest" in producing Plaintiff's injury; such a standard is irrefutably improper. *Bertrand v. Southern Pac. Co.,* 282 F.2d 569 (9th Cir. 1960), *cert denied*, 393 U.S. 1083 (1969); *Edmonds v. Illinois Central Gulf R.R. Co.,* 910 F.2d 1284, 1288 (5th Cir. 1990). From its early decisions forward, the United States Supreme Court has held that mere speculation and conjecture as to

causation is not sufficient to submit an FELA case to the jury. *Moore v. Chesapeake & Ohio Ry. Co.,* 340 U.S. 573, 578, 71 S.Ct. 428, 95 L.Ed. 547 (1951); *Kansas City So. v. Jones*, 276 U.S. 303, 48 S.Ct. 308, 72 L.Ed. 583 (1928); *Penn v. Chamberlin*, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819 (1933); *N.W. Pac. R. v. Bobo*, 290 U.S. 499, 54 S.Ct. 263, 78 L.Ed. 462 (1934).

Plaintiff may rely on *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500 (1957) to articulate the test for causation and outline the standard for instructing a jury on the issue of causation in a FELA case. However, *Rogers* does not provide that liability may be found upon slight evidence of causation. As a concurrence of United States Supreme Court justices recently expressed in *Norfolk Southern Railway Co. v. Sorrell*, 549 U.S. 158, 127 S.Ct. 799, 166 L.Ed.2d 638 (2007):

> Despite some courts' views to the contrary, *Rogers* did not address, much less alter, existing law governing the degree of causation necessary for redressing negligence as the cause of negligently inflicted harm; the case merely instructed courts how to proceed when there are multiple cognizable causes of an injury.

*Sorrell*, 127 S.Ct. at 810 (Souter, J., concurring) (footnote omitted). In *Rogers*, the Supreme Court disapproved the state court's improper invoking of "language of proximate causation which makes a jury question dependent upon whether the jury may find that *the defendant's negligence was the sole, efficient, producing cause of injury*." *Id.* at 506 (emphasis added). A rule that the railroad's negligence must be "the sole, efficient, producing cause of injury" is contrary to the statutory directive that renders a railroad liable if it is a partial cause of the employee's injury. 45 U.S.C. § 51. Rather, where the evidence suggested multiple possible causes, "the *test of a jury case* is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers* at 506 & n. 11 (emphasis added). This language concerns

8

the <u>submissibility</u> of a case where there are multiple cognizable causes of an injury – not the degree of causation required in FELA cases.

*Rogers* cannot be read to require only "slight evidence" to secure a verdict. Indeed, *Rogers* was not creating new law at all; it restated settled law under FELA for cases involving multiple causation. "<u>The absence of any intent to water down the common law requirement of proximate cause is evident from the prior cases on which *Rogers* relied</u>." *Sorrell*, 127 S.Ct. at 811 (Souter, J., concurring) (emphasis added).

As demonstrated by the above, in the instant case, Plaintiff must prove causation in the traditional manner of common-law negligence actions. *See also Ely v. Reading Co.*, 424 F.2d 758 (3rd Cir. 1970); *Funseth v. Great Northern Ry. Co.*, 399 F.2d 918 (9th Cir. 1968); *Kelly v. Union Pacific Railroad Co.*, 481 P.2d 56 (Or. 1971); *Dessi v. Pennsylvania Railroad Company*, 251 F.2d 149 (3rd Cir. 1958). As a result, Plaintiff must prove, by a preponderance of the evidence, negligence of Union Pacific caused, in whole or in part, Plaintiff's alleged injuries. If the injuries complained of are caused "in part" by a pre-existing or concurrent condition, Union Pacific is entitled to an apportionment instruction, because as discussed below, Union Pacific is not responsible for injuries Plaintiff would have experienced absent the accident.

## V. Apportionment of Damages

Notwithstanding the broad language of FELA and the manner in which plaintiffs have attempted to construe the infamous *Rogers* decision, it is clear that a railroad is liable for only those damages that are proximately caused by its negligence. *Sauer v. Burlington Northern R.R. Company*, 106 F.3d 1490 (10th Cir. 1997); *see also Norfolk & Western Ry. Co. v. Ayers*, 538 U.S. 135, 123 S.Ct. 1210 (2003) (reduction in jury verdict to reflect plaintiff's contributory negligence in smoking); *Schultz v. N.E. Ill. Reg. Commuter R.R.*, 775 N.E.2d 964 (Ill. 2002).

As a result, apportionment instructions must be given where the plaintiff suffers from a pre-existing or concurrent condition that is a cause of the alleged injury at issue. *Gustafson v. Burlington Northern Santa Fe Ry. Co.*, 252 Neb. 226, 561 N.W.2d 212 (1997) (upholding given instruction where the plaintiff requested additional language); *Wise v. Union Pacific R.R. Co.*, 815 F.2d 55, 58 (8th Cir. 1987) (quoting with approval instruction on apportionment for pre-existing condition).

The Court in *Richardson v. Missouri Pacific R. Co.*, 186 F.3d 1273 (10th Cir. 1999) specifically stated a plaintiff may recover for "any aggravation of the pre-existing condition, but those damages <u>are limited to the additional increment caused by the aggravation</u>." *Id*. at 1278 (emphasis added). Further, the Court stated the plaintiff "may not recover for pain or impairment that would have been experienced even if the accident never occurred." *Id*.; s*ee also Sauer v. Burlington Northern R.R. Co.*, 106 F.3d 1490, 1494 (10th Cir. 1997); *Harris v. Norfolk Southern Railway,* 319 F.2d 493 (4th Cir. 1963) (considering plaintiff's preexisting condition); *Gustafson v. Burlington Northern Railroad Company*, 561 N.W.2d 212 (Neb. 1997) (approving jury instructions which considered preexisting condition).

The United States Supreme Court has held that common law principles should guide the proper application of the Act. *Norfolk Southern Railway Co. v. Sorrell*, 549 U.S. 158, 127 S.Ct. 799, 166 L.Ed.2d 638 (2007); *Ayers*, 538 U.S. 135; *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994). Common law favors the apportionment of damages among multiple causes of the injury. RESTATEMENT 2D TORTS, § 433A (requiring apportionment of damages where there is a reasonable basis for determining the contribution of each caused to a single harm).

Union Pacific is entitled to apportionment even when there is no expert testimony regarding the same.

> Apportionment can be proved without expert testimony stating the percentage of injury attributable to the different causes.  When there is evidence that defendant's negligence aggravated a preexisting condition but expert testimony does not precisely apportion the injury, apportionment is an issue for the jury.

*Sauer v. Burlington Northern R.R. Co.*, 106 F.3d 1490, 1494 (10th Cir. 1997) (internal citations omitted).

In *Sauer*, the plaintiff alleged back injuries in the nature of a ruptured disc as a result of two incidents.  The railroad presented evidence that the plaintiff had a degenerative back condition that pre-dated the two incidents and his degenerative condition probably would have caused his disc to rupture if neither incident occurred.  The railroad was found negligent in respect to the second incident.  The jury apportioned 75% of plaintiff's injuries to pre-existing conditions.  Accordingly, the court instructed the jury to reduce the damages by the likelihood that the plaintiff would have eventually suffered the injury even if the accident had not occurred.

On appeal, the plaintiff argued that the evidence did not support the court's instruction because the railroad did not present an expert to precisely apportion the plaintiff's injury.  The Tenth Circuit rejected the plaintiff's argument, explaining:

> The extent to which an injury is attributable to a preexisting condition or prior accident need not be proved with mathematical precision or great exactitude.  The evidence need only be sufficient to permit a rough practical apportionment.

*Id.* at 1494.  The court further held that although apportionment of damages may be difficult, "it is a question for which juries are well suited."  *Id.* (citations omitted).  As the Seventh Circuit has concurred, a defendant need only offer "evidence that would have enabled the jury to make a sensible apportionment of the damages between the defendant's conduct and the normal vicissitudes of life that would have confronted [the plaintiff] and <u>might</u> have precipitated his

[illness]." *Lancaster v. Norfolk & Western Railway Co.,* 773 F.2d 807, 823 (7th Cir. 1985) (emphasis added).

In the instant case, Union Pacific is capable of demonstrating that Plaintiff has pre-existing and concurrent conditions, such as GERD, obesity, and likely sleep apnea which his own physician acknowledges are causing cough and shortness of breath – the very symptoms which Plaintiff attributes to the incident at issue. Union Pacific is not required to have an expert witness to testify to opinions on apportionment. This is a question for the jury, and the jury must not be precluded from considering it. Case law is well settled that under the FELA, the jury is required to apportion Plaintiff's damages between negligence-based work-related causes and non-work related causes.

## VI.    Damages Available under FELA.

Case law interpreting FELA uniformly limits recovery to compensatory damages. It is clear that as a matter of law punitive damages are not recoverable. *Kozar v. Chesapeake & Ohio Ry.*, 449 F.2d 1238 (6th Cir. 1971); *see also Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). Damages for injuries or occupational diseases under FELA are limited to such damages as will reasonably compensate an employee for past and future lost income and medical expense, pain and suffering, and diminished earning capacity. *Southern R.R. Co. v. Peters*, 194 Ala. 94, 69 So. 611 (1915); *Alabama Northern Railroad Co. v. Methvin*, 9 Ala. App. 519, 64 So. 175 (1913). Further, recovery of damages for loss of enjoyment of life is subsumed under pain and suffering. *Dugas v. Kansas City Southern Railway Lines*, 473 F.2d 821, 827 (5th Cir.), *cert. denied,* 414 U.S. 823 (1973).

In FELA cases, lost earning capacity is defined as follows:

> Earning capacity means potential for earning money in the future, which is not necessarily based on the amount of money being

earned at the time of the injury. The appropriate measure of
damage in this kind of case is not the total amount of future
earnings subjected to be lost but the present value of that sum.

*Taenzler v. Burlington Northern*, 608 F.2d 796, 798 (8th Cir. 1979) (*citing Beanland v. Chicago,*

*Rock Island and Pacific Railroad*, 480 F.2d 109 (8th Cir. 1973)). Thus net wage loss, reduced to

present value, is the proper measure of damages for lost earning capacity. *Norfolk & Western*

*Railway Co. v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755 (1980), *reh. denied* 445 U.S. 972 (1980).

Prejudgment interest is not available in FELA cases, *Wildman v. Burlington Northern*

*Railroad Co.,* 825 F.2d 1392 (9th Cir. 1987); *Sanford Bros. Boat Inc. v. Vidrine*, 412 F.2d 958

(5th Cir. 1969), nor are damages for loss of consortium. *Kelsaw v. Union Pacific R.R. Co.,* 686

F.2d 819 (9th Cir. 1982) *cert. denied*, 459 U.S. 1207, 103 S.Ct. 1197 (1983); *Anderson v.*

*Burlington Northern Inc.,* 469 F.2d 288 (10th Cir. 1972); *Miles v. Apex Marine Corp., supra*.

**VII.   Duty to Mitigate Damages.**

In cases prosecuted under FELA, an injured employee has a duty to mitigate his damages.

*Jones v. Consolidated Rail Corp.,* 800 F.2d 590, 593 (6th Cir. 1986); *see also Fashauer v. New*

*Jersey Transit Rail Operations, Inc.,* 57 F.3d 1269, 1287 (3rd Cir. 1995). Because Plaintiff is

required to mitigate his damages, mitigation may include further scholastic training, vocational

or rehabilitation training, or any other preparation necessary to improve his earning ability in

light of his injury. *Baker v. Baltimore & Ohio R. Co.*, 502 F.2d 638 (6th Cir. 1974); *Trejo v.*

*Denver & Rio Grande Western Railroad Co.*, 568 F.2d 181 (10th Cir. 1977).

A FELA defendant is entitled to an instruction on mitigation of damages if there is

evidence to support a finding that the plaintiff failed to mitigate his damages. *Brown v. Chicago*

*& Northwestern Transportation Co.,* 516 N.E. 2d 320 (Ill. App. 1987); *see also Wilson v.*

*Consolidated Rail Corporation,* 875 S.W. 2d 178 (Mo. Ct. App. 1994); *Trejo v. Denver & Rio*

*Grande Western Railroad Co.*, 568 F.2d 181 (10th Cir. 1977). Plaintiff cannot recover damages or losses which could have been avoided had a reasonable effort to lessen damages been made. *Brown*, 516 N.E.2d at 931-36.

As described above, FELA plaintiffs have a duty to mitigate damages by returning to work as soon as reasonably possible. *Trejo v. Denver & Rio Grande Western Railroad Co.*, 568 F.2d 181 (10th Cir. 1977); *Brown, supra.* In *Trejo* the plaintiff filed suit pursuant to the FELA alleging damages as a result of a slip and fall accident at work. The trial court, over the defendant railroad's objections, refused to instruct the jury that plaintiff was required to mitigate his damages by exercising reasonable efforts to find other employment. *Id.* at 184. Plaintiff argued that because of his age, language difficulties, education, and physical condition, he was unemployable as a matter of law. Concluding that the refusal to give the requested instruction was error, the Tenth Circuit Court reversed, reasoning that:

> [Plaintiff's] only efforts to secure employment were to ask the Company if light work was available for him and to ask his union for light work. *The Company's refusal of light work did not estop it from raising the question of mitigation.* A party is entitled to an instruction based on his theory of the case if there is record evidence to support it. (Citations omitted). <u>The question whether the conduct of plaintiff was reasonable effort in the circumstances was a question of fact for the jury under proper instructions.</u> *Id.* (Emphasis added).

In *Brown v. Chicago & Northwestern Transportation Co.*, 516 N.E.2d 320 (Ill. Ct. App. 1987), the defendant railroad presented testimony of an internal rehabilitation counselor who discussed various employment and educational options with the plaintiff for his consideration. Prior to implementing a vocational rehabilitation plan, however, the plaintiff's counsel contacted the rehabilitation counselor and demanded that he have no further contact with his client. *Id.* at 323-324. On appeal, the Illinois Court of Appeals addressed whether the trial court should have

instructed the jury regarding the plaintiff's duty to mitigate his damages. The court, citing *Trejo*, *supra*, stated: "It is abundantly clear in FELA cases that '[a] party is entitled to an instruction based on his theory of the case if there is record evidence to support it.'" *Brown* at 325. The *Brown* Court found that the railroad rehabilitation counselor's testimony:

> [r]aised a factual question concerning Brown's alleged failure to mitigate from which a jury might reasonably conclude that Brown was indifferent to finding alternative employment… Though there was no evidence presented of other jobs available to him, [defendant] obviously was never given the opportunity to determine if it could place Brown in another position or educate or retrain him for new duties or responsibilities.

*Id.*

In *Wieczorek v. Southern Pacific Transportation Co.,* 149 F.3d 1192, 1998 U.S. App. LEXIS 11714 (10th Cir. 1998) (decision with unpublished opinion), the FELA plaintiff appealed the trial court's decision, arguing that it was error to instruct the jury on mitigation of damages because there was insufficient evidence to support that theory. The Tenth Circuit Court of Appeals affirmed, holding that sufficient evidence of record did exist to support the instruction. *Id.* at *5-6. The medical evidence established that plaintiff was capable of performing sedentary employment. The evidence further established that one of the defendant railroad's representatives offered plaintiff an "off the record" job opportunity that the plaintiff refused to accept. The court held that "[a]lthough plaintiff contends that 'in context, it is clear that [he] did not consider [it] to be a legitimate or viable job offer,' this question was properly for the jury to decide." *Id.* at *4. As further support for a mitigation instruction, the court noted that the defendant offered evidence that the plaintiff failed to participate in its internal vocational rehabilitation program. *Id*. at *4-5.

In sum, whether the conduct of plaintiff was reasonable effort under the circumstances is a question of fact for the jury, and Defendant is entitled to a mitigation instruction where there is evidence to support a finding that the plaintiff failed to mitigate his damages.

**VIII.  RRB Disability Benefits Must be Offset**

Plaintiff seeks compensation for past and future wage loss, yet significantly, Plaintiff is receiving disability benefits from the Railroad Retirement Board ("RRB") that already compensate him for wages lost in connection with the same alleged injury.  These benefits are funded in substantial part by Union Pacific.  Governing law does not permit Plaintiff to receive double compensation from Union Pacific for the same wage loss.  Therefore, this Court should allow the jury in this case to offset any award of past or future wage loss by the amount that Union Pacific has contributed, and will continue to contribute, to Plaintiff's disability benefits.

**A.      The RRB Disability Benefits That Plaintiff Has Received, Or Will Receive, Substantially Replace The Lost Wages He Claims.**

Railroad employees are covered by the Railroad Retirement System, a unique system covering only the railroad industry.  The Railroad Retirement Board ("RRB") administers the benefits provided under the Railroad Retirement System.  Among the benefits provided are occupational disability annuities, available to employees who qualify on the basis of age and/or years of service.  45 U.S.C. § 231a.  Depending on the nature of the disability suffered, railroad employees may qualify for one of two kinds of disability benefits.  Employees who are unable to work at any regular employment may qualify for total and permanent disability benefits.[1]  *Id*. at § 231a(a)(1)(v).  Even if not qualified for total and permanent disability benefits, employees who are disabled from working in their regular occupation on the railroad may qualify for an

---

[1] To qualify for a total and permanent disability annuity, an employee must have at least five years of service. *Id*.

occupational disability annuity.[2]  *Id.* at § 231a(a)(1)(iv).  This special benefit is not available to workers covered by Social Security.

Although disability benefits are administered and paid by the RRB, they are largely funded by railroad employers.  Specifically, disability annuities are funded by railroad retirement tax payments based on the compensation paid to each employee throughout his/her employment.[3]  Tier I RRB benefits, which, for the most part, are equivalent to benefits available under Social Security, are funded by Tier I payroll taxes, supplemented by other sources, including a financial interchange arrangement with the Social Security System.  RRB Annual Report, at 8-10.  But Tier II RRB benefits, which provide for an employee's disability annuity, are financed entirely by the Tier II payroll taxes levied on railroad employers and employees.

Plaintiff presently receives a disability annuity from the RRB. [4]  Although the RRB tax rates have changed over the period of Plaintiff's employment, Union Pacific has consistently contributed the majority of the funding for Plaintiff's present annuity payments.  The question becomes, then, whether Plaintiff may recover unmitigated compensation from Union Pacific for lost wages in the form of a jury award when Union Pacific is also the primary contributor to disability benefits that he is receiving or will receive as compensation for the same loss.  The answer is a resounding no.  Because Plaintiff already receives a Tier II disability annuity to

---

[2] To qualify for an occupational disability annuity, an employee must have either twenty years of service, or must be sixty years old.  *Id.*

[3] These payroll tax-funded benefits presently consist of (1) employer and employee Tier I tax payments of 6.2% each on an employee's compensation up to $106,800; (2) employer Tier II tax payments of 12.1% on an employee's compensation up to $79,200; and (3) employee tax payments of 3.9% for Tier II taxes on an employee's compensation up to $79,200.

[4] Plaintiff receives monthly payments for most, if not all, of the time period for which he seeks compensation for the time that he is not working.  These monthly payments continue for the remainder of Plaintiff's life.  Once he reaches normal retirement age based on date of birth, the annuity converts to a regular retirement annuity.

replace wages allegedly lost as a result of his claimed injury, governing federal law prohibits him from recovering duplicate past and/or future wage loss in this FELA action.

**B.  Federal Regulations Prohibit Railroad Employees From Receiving Pay For Time Lost For the Same Time Period That They Receive RRB Disability Annuity Payments.**

**1.  Pay for time lost includes remuneration paid while absent from work due to personal injury.**

The Railroad Retirement Act ("RRA") and RRB regulations prohibit railroad employees who have not resigned or otherwise relinquished their employment rights with the railroad from receiving both "pay for time lost" and disability annuity payments covering the same loss.[5]  The pay or compensation that employees may receive that subjects them to this prohibited double recovery is defined very broadly.  The RRA defines pay or "compensation" as:

> . . . any form of money remuneration paid to an individual for services rendered as an employee to one or more employers or as an employee representative, including remuneration paid for time lost as an employee, but remuneration paid for time lost shall be deemed earned in the month in which such time is lost.

45 U.S.C. § 231(a)(1)(h)(1) (emphasis added).

Further, the RRA provides that employees may be deemed having received pay for time lost while absent from work due to personal injury:

> An employee shall be deemed to be paid "for time lost" the amount he is paid by an employer with respect to an identifiable period of absence from the active service of the employer, including absence on account of personal injury . . . .

45 U.S.C. § 231(a)(1)(h)(2) (emphasis added).  Similarly, RRB regulations provide as follows:

> (a) A payment made to an employee for a period during which the employee was absent from the active service of the employer is considered to be pay for time lost and is, therefore, creditable

---

[5] RRB regulations provide that absence from work due to disability does not sever the employee's employment relationship with the railroad.  20 C.F.R. § 204.6.

> compensation.  <u>Pay for time lost as an employee includes: (1) Pay received for a certain period of time due to personal injury</u> . . . .

20 C.F.R. § 211.3(a)(1) (emphasis added).

Notably, RRB regulations also provide that for purposes of annuity calculation and entitlement under the RRA, "[a]ny month or any part of a month during which an employee performed no active service but received pay for time lost as an employee is counted as a month of service." 20 C.F.R. § 210.5(d).

> **2.      Pay for time lost includes personal injury awards, which the RRB deems as compensation and subject to taxation.**

As more fully explained in the RRB's publication entitled, <u>Pay For Time Lost From Regular Railroad Employment</u>, Form IB-4 (06-96) p.1-2, pay for time lost commonly includes personal injury awards and settlements:

> Pay for time lost is compensation paid by a railroad employer which is creditable under the Railroad Retirement Act (RRA) and the Railroad Unemployment Insurance Act (RUIA) and which is attributable to lost earnings for an identifiable period of absence from active service . . .
>
> The intent behind the pay for time lost concept is to treat an employee as if he or she had actually performed compensated service during an identifiable period of time.  The effect of pay for time lost upon eligibility and benefits under the RRA and the RUIA is identical to the effect of regular earnings for which service and compensation credit are received . . .
>
> <u>The most common type of pay for time lost arises out of "on the job" personal injury . . . awards or settlements . . . .</u>  (Emphasis added.)

In RRB Legal Opinion, L-2010-04, the RRB stated that the RRA, its regulations and prior legal opinions mandate that FELA judgments that include compensation for past and/or future wage loss must be reported to the RRB.  The RRB allocates such judgments to the period of time that the employee missed work up to the date of judgment.  The RRB also allocates such

judgments to future months, if applicable. Further, Union Pacific is required to withhold applicable RRB taxes representing Plaintiff's Tier I, Tier II and Medicare tax obligations upon payment of any judgment that includes pay for time lost. *See* 45 U.S.C. § 358, RRB Legal Opinion L-2010-4. *See also* <u>RRB Pay For Time Lost From Regular Railroad Employment</u>, Form IB-4 (06-96) p. 5, 9:

> <u>Pay for time lost is considered compensation under the Railroad Retirement Tax Act. Thus, an employer is required to withhold and pay the employment taxes due on pay for time lost.</u> (Emphasis added).
> . . .
> Medicare taxes must be withheld from a payment for time lost. The railroad retirement and Medicare parts of the Tier I tax rate have separate, different earnings bases. When an employee's taxable earnings attain the Tier I maximum earnings base, Medicare taxes must continue to be deducted because there is no Medicare maximum amount.

**3.      The RRB must recoup annuity payments if an FELA jury award includes lost wages deemed earned for the same time period.**

Significantly, the RRB's Legal Opinion L-87-91 specifically involves an FELA jury award. In referencing Section 1(h)(2) of the RRA (45 U.S.C. § 231(a)(1)(h)(2)), the RRB opines that such an award is pay for time lost if it includes lost wages:

> [A]n employee shall be deemed to be paid 'for time lost' the amount that he is paid by an employer with respect to an identifiable period of absence from active service for the employer, including absence on account of personal injury. . . . <u>[i]f a payment is made by an employer with respect to a personal injury and includes pay for time lost, the total payment should be deemed to be paid for time lost</u> unless there is a specific apportionment to factors other than pay for time lost. (Emphasis added.)

In such instance, the RRB must recoup annuities paid when an employee has received pay for time lost during the same time period. The RRB made this clear in another case involving pay for time lost in other types of litigation. The RRB stated in that case that pay for

time lost is "compensation" under the RRA, which is deemed earned in the month in which such time was lost. *See* RRB Legal Opinion L-84-22. Upon allocation of the compensation to those months:

> The employee will forfeit any annuity which he or she received in the month in regard to which the back pay is credited. <u>The Board would be required to recoup the overpaid annuities pursuant to 45 U.S.C. § 231i(a), through case repayment or by withholding future annuities payable.</u>

*Id.*[6]

### 4. Governing law precludes annuity overpayments, which occur when a jury award includes lost wages.

As a matter of law, railroad employees may not receive both a disability annuity and lost wages included in an FELA jury award for the time period covering the same loss. Otherwise, they will receive an unlawful overpayment:

> <u>[B]ecause pay for time lost is effectively the same as compensated service for active employment, an employee is not entitled to an annuity under the Railroad Retirement Act with respect to any months to which pay for time lost has been allocated.</u> For this reason, <u>a pay for time lost allocation to an employee who is already receiving an annuity may cause an annuity overpayment</u>.

<u>RRB Pay For Time Lost From Regular Railroad Employment</u> Form IB-4 (06-96) p. 12 (emphasis added). As such, an employee may not receive the annuity and must forfeit the total amount of any month of annuity payments that have been or will be paid concurrent with creditable railroad compensation:

> <u>If an individual in receipt of an annuity renders compensated service, he shall not be paid an annuity with respect to any month in which such service is rendered to:</u> (a) <u>an employer;</u> . . . (c) any person with whom he held, at the time the annuity begins to

---

[6] A negotiated settlement of an employee's FELA claim, which includes compensation for past or future wage loss, is not subject to RRB taxes or forfeiture of the employee's disability annuity if the parties agree that the settlement proceeds are allocated to factors other than time lost. *See* 45 U.S.C. § 231(a)(1)(h)(2).

accrue, any rights to return to service; (d) any person with whom he ceased service in order to have his annuity begin to accrue.

20 C.F.R. § 230.2.

Consequently, if Plaintiff obtains a jury award that includes compensation for time lost, the award is "creditable compensation" or "compensated service" that must be allocated to those months that Plaintiff was off work.  *See* RRB Legal Opinions L-2005-03 and L-92-18.  *See also* 45 U.S.C. §351(i)(1).  Creditable awards of pay for time lost will cause an overpayment to a disability annuitant for the amount of benefits received during those months.  *See id*.  Further, if a disability annuitant is awarded pay for time lost into the future, and the requirements for allocating pay for time lost into the future are satisfied, annuity payments may be suspended.

In short, the federal government never intended that disability annuitants such as Plaintiff receive both disability payments and pay for time lost covering the same loss.  This is supported by the law that it has promulgated.

C.      **This Court Should Allow Evidence Of Plaintiff's Receipt Of An RRB Disability Annuity Payments To Avoid An Unlawful Double Recovery.**

In *Eichel v. New York Cent. R. Co.*, 375 U.S. 253 (1963), a case brought under the FELA, the United States Supreme Court simply acknowledged that the defendant railroad had not asserted that it should be permitted to introduce evidence that the plaintiff was receiving Railroad Retirement benefits to mitigate the damages for which the defendant might be liable.[7]  (Inasmuch as this question was not in issue, it was neither briefed nor argued to the Court.)  Since then, railroad employees have taken this unremarkable statement of dicta to argue that they may recover awards for lost wages under the FELA even though they are also collecting monthly Railroad Retirement disability payments for the same time period that they are off work.

---

[7] Instead, the defendant had argued that evidence of receipt of railroad retirement benefits should be admitted to show malingering.  The Supreme Court ruled against the defendant on that issue.

However, governing law prohibits railroad employees from being compensated twice for the same loss, nor does it contemplate that employers pay twice for the same loss. Accordingly, the jury should be allowed to consider Plaintiff's receipt of disability annuity payments to ensure that it properly follows the law.

1. **The collateral source rule does not preclude evidence of Plaintiff's receipt of an occupational disability annuity.**

The collateral source rule precludes the introduction of evidence of payments or benefits received by plaintiffs that mitigate their losses. The purpose of the rule is to prevent a tortfeasor from gaining a windfall because the plaintiff is receiving compensation from an independent source.[8] "However, where the defendant has been the source of the payment, the damages, generally, cannot include the benefit conferred by the defendant." *Feeley v. United States*, 337 F.2d 924, 927 (3rd Cir. 1964). Although "the collateral source rule . . . bars a tortfeasor from reducing the quantum of damages owed to a plaintiff by the amount of recovery the plaintiff receives from other sources of compensation that are independent of (or collateral to) the tortfeasor," *Davis v. Odeco, Inc.*, 18 F.3d 1237, 1243 (5th Cir. 1994), "[p]roperly interpreted [it] also prevents tortfeasors from paying twice for the same injury -- a result that would achieve both overdeterrence and overcompensation. *Id*. at 1243, n.21. *See also Phillips v. Western Co. of N. Am.*, 953 F.2d 923, 931 (5th Cir. 1992).

As discussed above, benefits received from the Railroad Retirement disability system are not compensation that is independent of the railroad employer. Rather, these benefits are funded by a substantial contribution of the employer. The *Eichel* decision did not consider this point, as

---

[8] *Kassman v. American Univ.*, 546 F.2d 1029, 1034 (D.C. Cir. 1976); *FDIC v. United Pac. Ins. Co.*, 20 F.3d 1070, 1083 (10th Cir. 1994).

the issue was not before the Court.[9]  *Eichel*, therefore, does not stand for the proposition that injured railroad employees are entitled to an unlawful double recovery, i.e., full wage loss under FELA and substantial wage replacement in the form of a disability annuity.  Indeed, *Eichel* does not "requir[e] the per se exclusion of collateral source evidence in FELA cases."  *McGrath v. Consolidated Rail Corp.*, 136 F.3d 838 (1st Cir. 1998).[10]

Informing the jury of Plaintiff's receipt of disability benefits, even if it results in the amount of that benefit being offset against a damage award, would not visit any hardship on Plaintiff.  He would still receive his full wage loss through a combination of his disability benefits and the damage award from Union Pacific (and would also be entitled to any noneconomic damages that he could prove).  So long as Plaintiff receives the equivalent of his full wage loss, he is being made whole, which, of course, is the purpose of the FELA.  *Michigan Central R. Co. v. Vreeland*, 227 U.S. 59, 70 (1913).

### 2.    FELA dictates that Plaintiff receive only one recovery for lost wages.

FELA does not contemplate that Plaintiff receive any more than the full actual loss suffered as a consequence of the injury.  In *Norfolk & Western Ry. v. Liepelt*, 444 U.S. 490 (1980), the Supreme Court held that a trial court may not preclude a railroad from introducing evidence of the income taxes payable on the plaintiff's past and future wages.  Such evidence would tend to decrease the amount of damages for which the railroad would be liable to the injured employee.  Nonetheless, even though it may serve to reduce the defendant's liability,

---

[9] *Eichel* did quote from the case of *New York, N.H. & H. R. Co. v. Leary*, 204 F.2d 461 (1st Cir. 1953), *cert. denied*, 346 U.S. 856 (1953), to the effect that benefits received under the RRA are not directly attributable to the contributions of the employer.  This statement, however, is inaccurate.  Although the money paid in by a specific employer is not earmarked for a particular employee's benefits, money is fungible and, through their payment of billions of dollars in Tier II taxes over the years, railroads contribute substantial funds for the payment of disability benefits to employees injured at work.

[10] In *McGrath*, the court ruled that is was permissible to allow in evidence of disability benefits on the issue of malingering, the very issue which was before the Supreme Court in *Eichel*.

such evidence is appropriate because the goal of FELA is to replace only what the injured party has lost.[11]

Nothing in FELA requires courts to interpret the statute to enhance the likelihood or amount of recovery by the employee when such an interpretation is not supported by the words of the statute or the principles that govern ordinary negligence cases. This is clear from other Supreme Court decisions interpreting FELA.[12] Though in enacting FELA Congress took specific affirmative steps to lower the then-existing common law barriers to recovery,[13] where Congress did not specifically alter the common law, FELA jurisprudence is to be guided by common law principles. *See Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 544 (1994) ("Only to the extent of these explicit statutory alterations is FELA 'an avowed departure from the rules of the common law.'"). Accordingly, there is no basis to assume that the collateral source rule acquires any special application in the context of the act, or to require that the collateral source rule be applied to assure a double recovery for railroad employees even when to do so would not effectuate its purpose.[14]

Railroad employers have a federal right to have the damages determined under a method that will provide FELA claimants with full compensation for their losses, but no more. *See Liepelt*, 444 U.S. at 493-96. FELA grants railroad employees, and their beneficiaries, a federal

---

[11] *Liepelt, supra,* at 496, n. 10, rejecting the dissent's contention that the Court's ruling "appropriates for the tortfeasor a benefit intended to be conferred on the victim or his survivors."

[12] In *Monessen Southwestern R. Co. v. Morgan*, 486 U.S. 330 (1988), the Court declined to find that prejudgment interest was available under the FELA, reasoning that Congress had not explicitly provided for it and that it generally was not recognized at common law when the FELA was enacted. The Court refused to expand the common law zone-of-danger test for adjudicating the FELA claims alleging intentional infliction of emotional distress. *Metro North Commuter R.R. Co. v. Buckley*, 117 S. Ct. 2113 (1997).

[13] 45 U.S.C. § 53 eliminated the defense of contributory negligence in favor of comparative negligence. 45 U.S.C. § 54 eliminated the assumption of the risk defense.

[14] In fact, the FELA expressly permits the employer to offset any amount which it contributed to any benefit paid to an injured employee on account of the injury. 45 U.S.C. § 55. Evidence of contributions made by the employer, therefore, must be relevant to the issue of damages.

right to recover "damages" from their employers for injuries or deaths caused, "in whole or in part [by] the negligence of any of the [railroad's] officers, agents, or employees." 45 U.S.C. § 51. The Supreme Court has repeatedly held that FELA economic awards are to compensate the Plaintiff for his "pecuniary damages . . . and for that only." *Vreeland*, 227 U.S. at 69-72. "The damage is limited strictly to the financial loss thus sustained." *American R.R. Co. of Porto Rico v. Didricksen*, 227 U.S. 145 (1913); *see also Gulf, Colorado & S.F. Ry. Co. v. McGinnis*, 228 U.S. 173, 175-176 (1913) (recoverable damages limited to "the actual pecuniary loss").

Consistent with the principle that FELA damages must be limited strictly to losses sustained, the Supreme Court, in a variety of contexts, has reversed lower court judgments when those courts created a significant risk that the trier of fact would award a sum that would overcompensate the claimant. For example, in *Chesapeake & Ohio Ry. Co. v. Kelly*, 241 U.S. 485 (1916), the Supreme Court required that awards for lost prospective financial benefits be reduced to present value. The Court explained that "without taking account of the earning power of the money that [was] presently . . . awarded," the plaintiff's verdict would be greater in value than the "pecuniary benefits that would have resulted from the continued life of the deceased" and thus contrary to the purpose of damages awards under the FELA. *Id.* at 489. Similarly, in *Kansas City Southern Ry. v. Leslie*, 238 U.S. 599 (1915), the state judgment was reversed because the instructions had allowed the jury to include in the award portions of the decedent's estimated gross earnings, which would not have been contributed to the beneficiaries if there had been no accident. These principles of damages are binding on both state and federal courts that administer the FELA. *See Liepelt*, 444 U.S. at 493.

This bar against overcompensation has led numerous courts to hold that FELA precludes punitive damages awards in both wrongful death and personal injury cases. Courts have

interpreted Supreme Court decisions as "clear, unambiguous statements . . . holding that damages recoverable under the Act are compensatory only." *Kozar v. Chesapeake & Ohio Ry. Co.*, 449 F.2d 1238, 1241-42 (6th Cir. 1971). *See also Wildman v. Burlington N. R.R.*, 825 F.2d 1392, 1394 (9th Cir. 1987); *State ex rel Burlington Northern, Inc. v. District Ct.*, 548 P.2d 1390, 1393-95 (Mont. 1976). The critical point is that Congress intended to make injured employees whole for their losses, but nothing more. Again, Congress expressly recognized this fact when it provided that disability annuitants cannot recover both disability payments and pay for time lost covering the same time period.

> **D.** **An Offset of Union Pacific's Tier II Payroll Tax Contributions Will Promote Important Public Policy Goals of Rehabilitation and Re-employment.**

Plaintiff should not be permitted to seek in this FELA action lost wages for which he has already been compensated, not only because it would constitute a windfall inconsistent with RRB regulations and FELA's compensation principle, but also because it is inimical to an important public policy goal. Any compensation scheme for workplace injuries should have as a goal the rehabilitation and return to productive employment of injured workers. Overcompensating injured workers creates an incentive for employees to avoid returning to work. This is a problem recognized and addressed by other compensation systems.

For example, the workers' compensation system that covers the vast majority of American workers sets limits on the amount of compensation that can be recovered for last wages and generally does not allow recovery of damages for pain and suffering. A. Larson & L. Larson, *Larson's Workers' Compensation Law* § 1.03[4] & [5] (2004 Ed.). Workers' compensation laws limit recovery for wage loss to a percentage of the employee's weekly wages, typically two-thirds. U.S. Chamber of Commerce, 2008 Analysis of Workers' Compensation Laws 48-56, Chart VI (2008). In part, this is to take into account the effect of taxes in reducing

the employee's take-home pay. Peter M. Lencsis, Workers' Compensation: A Reference and Guide 57 (1998). In addition, workers' compensations statutes further limit wage loss compensation by capping weekly benefits, a limitation that does not apply to FELA. U.S. Chamber, Chart VI.

One reason workers' compensation systems establish limits on wage loss benefits is the widely accepted view that if compensation matches, exceeds, or even approaches the employee's entire wage loss, there will be little incentive to seek rehabilitation and return to work promptly. Meyers, Viscusi & Durbin, *Workers' Compensation and Injury Duration: Evidence from a natural Experiment*, 85 Amer. Econ. Rev. 322 (1995); Burton, *Disabled Workers' Compensation Programs: Providing Incentives for Rehabilitation and Reemployment,* 8 John Burton's Workers' Compensation Monitor (No. 4) 6 (1995). As the leading treatise explains, "Practically all acts [] set a maximum in terms of dollars per work. . . . It was never intended that compensation payments [under workers' compensation] should equal actual loss, if for no other reason than that such a scale would encourage malingering." Larson at § 1.03[5].

Moreover, rehabilitation is becoming an increasingly important part of workers' compensation programs. *Id*. at Ch. 95. In some cases, workers' compensation benefits may be suspended when the employee refuses to cooperate with rehabilitation efforts. *Id*. at § 95.04; *Lencsis* at 56.

On the other hand, although FELA plaintiffs have a duty to mitigate damages, *see, Trejo v. Denver & Rio Grande R.R.*, 568 F.2d 181 (10th Cir. 1977), their ability to receive disability annuity payments and an unreduced jury award of lost wages fails to promote rehabilitation and re-employment, and instead promotes extended disability. FELA and cases construing it call for a contrary result. The overcompensation sought by Plaintiff here should be avoided in favor of a

rule of law that promotes the public interest in returning injured employees to gainful employment.

Respectfully submitted,

By: _s/ Tracy J. Cowan_____
    Tracy Jonathan Cowan, #6217504
    Karen M. Volkman, #06271724
    10 S. Broadway, Suite 1450
    St. Louis, Missouri 63102
    (314) 678-8600
    (314) 678-8686 – Facsimile
    tcowan@hptylaw.com
    kvolkman@hptylaw.com

    William Lamson, *Pro Hac Vice*
    10306 Regency Parkway Drive
    Omaha, NE 68114-3708
    (402) 397-7300
    (402) 397-7824 – Facsimile
    wlamson@ldmlaw.com

    Attorneys for Defendant
    Union Pacific Railroad Company

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of December, 2010, I electronically filed Defendant Union Pacific Railroad Company's Trial Brief with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Kenneth Barnes, Esq.
Tequiero M. "T.K." Smith, Esq.
Jason D. Kander, Esq.
The Barnes Law Firm, LLC
1100 Main Street, Suite 2300
Kansas City, MO, 64105-5187
kbarnes@law4321.com
tksmith@law4321.com
jkander@law4321.com

Attorneys for Plaintiff

Respectfully submitted,

By: s/ Tracy J. Cowan
    Tracy Jonathan Cowan, #6217504
    Karen M. Volkman, #06271724
    10 S. Broadway, Suite 1450
    St. Louis, Missouri 63102
    (314) 678-8600
    (314) 678-8686 – Facsimile
    tcowan@hptylaw.com
    kvolkman@hptylaw.com